Duvall.
2du 4
d101 662

CASE 2—PETITION ORDINARY—JUNE 7.

# Cin., Ham., and Dayton Railroad Co. and Dayton and Mich. Railroad Co. vs. Spratt.

### APPEAL FROM JEFFERSON CIRCUIT COURT.

1. In an action against several, one of them being a nominal and unnecessary party, between whom and the plaintiff there is no litigation, a judgment against " *the defendants*," without discrimination, although erroneous, is a clerical misprision.

2. One who, if the plaintiff succeeds, may be liable to the defendants for negligence, is a competent witness for plaintiff.

3. Where a contract of affreightment contains a provision entitling the carriers, in the event of their own liability for damages, against which the consignor had obtained an insurance, to recover the amount from the underwriter, the carrier must pay the damage before he can claim such right.

4. In such case the consignor may sue either the carrier or underwriter; and a judgment in favor of the carrier against the underwriter, or *vice versa*, would not bar the right of the consignor to recover against the carrier. (*Arn. on Ins.*, 2d ed., 1178–80; *Phill. on Ins.*, 3d ed., 1707–11.)

5. Where several parties are associated for the transportation of freight from Louisville to New York, executing through bills of lading, and charging through freight, they will each be chargeable as common carriers between those points. And, in such cases, public justice and commercial policy require a stringent construction against any intermediate irresponsibility.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

The appellants having been, for some time, associated as carriers of commodities from Louisville to New York, in connection with the mailboat line from the former place to Cincinnati, and with railroad companies from the terminus of the Dayton and Michigan railroad to the city of New York, charging "through" freight and giving through bills of lading for the entire line from Louisville to New York, their common agent at Louisville, on the 19th of February, 1863, received there, from an agent of Bell & Murdock, nine hogsheads of tobacco, executed a through bill of lading for the transportation of them from Louisville to New York, and delivered them on the mail-boat "*Major Anderson*," which delivered them, on the morning of the next day, in good order, on the wharf-boat of the Cincinnati, Hamilton, and Dayton railroad, at Cincinnati, about two squares from that company's depot, in that city. A few hours after that delivery, the tobacco was damaged by the sinking of the wharf-boat. Whereupon the appellants, without notice to the appellee, proceeded to sell the damaged article, and claimed to hold the proceeds for the consignor, subject to the deduction of freight, *pro rata itineris*, to which they were not entitled. The appellee, as assignee of the bill of lading, brought this suit against the appellants for the value of the tobacco in New York, and *pro forma*, made Bell & Murdock co-defendants. Verdict and

judgment were rendered in appellee's favor against "*the defendants*" for the assessed value of the tobacco in the city of New York, deducting the through freight from Louisville to New York. And this appeal seeks the reversal of that judgment on various grounds, which will be considered in the order in which they are urged.

1. There being no evidence against Bell & Murdock, the appellants say that the judgment against *the defendants*, without discrimination, was erroneous. This objection, though specious, is yet untenable. There was no litigation between the appellee and these unnecessary and nominal parties, and the entire record shows that "the defendants" did not include them, but the contesting railroad companies only, and, consequently, if the style of the isolated judgment could be deemed apparently prejudicial to them, the error was a clerical misprision, not correctable by appeal to this court.

2. The appellants insist that Pearce, a joint owner of the *Major Anderson*, who testified for the appellee, was interested in the event of the suit, and therefore incompetent. But the plea released him, and, thereby, his co-tenants. And although, if the damage resulted from a negligent landing of the steamboat, or an improper delivery of the tobacco on the wharf-boat, a recovery by the appellee therefor against the appellants would make him responsible to them, yet that contingent liability would incline his interest to the side of the party against whom he was called to testify. Wherefore, his only legal interest did not render him incompetent as a witness for the appellee, and, consequently, there was no error in overruling the objection to his competency.

3. The appellants also charge that the circuit court erred in sustaining a demurrer to the second paragraph of their answer, in which, relying on a provision in the contract of affreightment, entitling them, in the event of their own liability for damage, against which the consignor had obtained an insurance, to recover the amount from the underwriter, they aver that he had agreed to pay the loss, and this suit was prosecuted for his benefit. On this point also we concur with the court below.

Had there been no such contract for substitution, the appellee would have had a legal right to sue, either on the policy or on the bill of lading, and the underwriter, without actual' *payment* ·of the damage, would not have been entitled, by subrogation, to sue the carriers; nor could the latter recover against the former without some special agreement for that purpose with the assured. (*2d ed. Arnold on Ins.*, 1178–80; *3d ed. of Phillips on Ins.*, 1707–11.) And without some such special agreement, the carrier would not be entitled, even after payment, to substitution against the underwriter. (*2d Barnwall & Cresswell*, 254; *4th Bingham, new cases*, 272.) And, according to the same principle, the special contract, as alleged in the second paragraph of the answer, would not entitle the carriers, before payment of the damages, to recover from the underwriter by action. The appellants have not pleaded the ulterior liability of the underwriter to them as a counter-claim or set-off. And their allegation that this suit is prosecuted for his benefit did not make him a party. The demurrer, tacitly ˙admitting that allegation, did not conclude or affect him as to that fact, and it could not be availably litigated, as against him, unless he had been a party. But, had he been made a party, the facts pleaded could not have barred the appellee's right to recover damages from the appellants. He elected to sue them, and no judgment which they might recover against the underwriter would bar his action or pay to him the damage he may have sustained by their delinquency.

Wherefore, the second paragraph in the answer was insufficient, and the appellants were properly remitted to their independent action, in which it might be decided whether any agreement between a carrier and the assured can make the underwriter liable to the carrier.

4. As a more radical objection to the judgment, the appellants insist that their undertaking, in the bill of lading, was only that they would *forward* the tobacco from Louisville to New York; that they were therefore responsible as common carriers only to the extent of their own lines of railroad, and that these terminated at the depot in Cincinnati; and that,

consequently, they are not liable for damage done at the wharf.

But, in our opinion, the law and the facts do not sustain this defense earnestly relied on in their answer. The facts conduce to prove that the appellants, associated as they were with steamboats and other carriers from Louisville to Cincinnati, as joint transporters between those points, and jointly charging through freight and giving through receipts, were, in both the popular and the technical import, common carriers to the whole extent between those termini; and, in law, were, throughout, both forwarders and carriers.

The wharf-boat belonged to the Cincinnati, Hamilton, and Dayton railroad company, and the employed keeper of it, McCoy, was the agent of each of the appellants, and was directed by both to receive from the steamboat and carry to the Cincinnati depot all articles shipped from Louisville to New York. The fact that McCoy, for his compensation, was entitled to one half of the drayage, does not affect the question of his mere agency for the appellants. A delivery on the wharf-boat was not for storage, but solely for transportation by the appellants, and was there, and thence to the depot, only subservient to such transportation. They were, therefore, constructively as well as actually, at the wharf and from it to their Cincinnati depot, forwarders, wharfingers, and carriers; and, without some special contract for exemption, were liable as common carriers. (*Parsons on Mercantile Law*, 203; *Angell on Carriers*, section 131, and *Story on Bailments*, section 536.)

And, in all such cases of associated companies engaged in a common undertaking for transportation on a long line, of which each associate owns a different link, public justice and commercial policy require a stringent construction against any intermediate irresponsibility as a common carrier.

We are therefore of the opinion that the delivery of the tobacco on the wharf-boat was a constructive delivery of it to the appellants for transportation as common carriers.

5. But the last and most formidable objection urged against the judgment, is, that, by a stipulation in the contract of

affreightment, the appellants were released "from all claim for loss or damage by fire, or other casualty, while in the companies' depots or place of transhipment."

Waiving a consideration of the question how far such a special agreement for restricting the legal responsibility of a common carrier should ever be available against the public policy controlling his peculiar liabilities and duties, we are of the opinion that, however that may be, the verdict in this case was authorized by the facts proved on the trial. The jury had a clear right to infer that the sinking of the wharf-boat resulted from defects in the boat, which proper vigilance and prudence would have discovered and repaired; and surely a common bailee, for hire, would be responsible for such negligence.

6. The last objection is to the amount of the verdict. As the sale of the tobacco, without the knowledge of the appellant, made the loss constructively total, he had a right to claim the value of the tobacco at New York, just as if, according to the contract, it had been there safely and opportunely delivered; and, so considering it, he was responsible for the freight to which the appellants would have been entitled had they so delivered it; and the verdict properly assessed the value of the tobacco as so carried to New York, deducting therefrom the entire through freight. This was right.

Wherefore, perceiving no essential error to the prejudice of the appellants, the judgment is affirmed.