JAMES R. BAKER

*v.*

THE MICHIGAN SOUTHERN AND NORTHERN INDIANA RAILROAD COMPANY *et al.*

|      |      |
| ---- | ---- |
| 42   | 73   |
| 191  | 3 73 |
| 42   | 73   |
| 102a | 3 184|

1. PAROL EVIDENCE — *contradicting a bill of lading.* Although a common carrier, in receiving goods for transportation, may issue a bill of lading therefor, containing provisions restricting his common law liability, that is not conclusive upon the shipper, as to the terms upon which the goods are to be carried, but he may show by parol that there was a prior verbal agreement, under which the goods were shipped, and which did not provide for the restrictions upon the carrier's liability contained in the bill of lading.

2. JURY — *must decide facts.* The practice in this State does not warrant the court in finding the facts, and directing the jury how to find their verdict.

3. PARTIES — *in actions for tort.* In an action on the case against several railroad companies to recover damages resulting to property shipped over their several lines, by reason of delay in its transportation, the same rule applies as in other actions for tort, that a verdict of guilty may be found against a part of the defendants and an acquittal as to others, and a misjoinder of defendants cannot be alleged.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was an action on the case brought in the Circuit Court by James R. Baker against The Michigan Southern and Northern Indiana Railroad Company, The Cleveland and Toledo Railroad Company, The Sandusky, Mansfield and Newark Railroad Company and the Central Ohio Railroad Company, to recover damages resulting from delay on the part of the defendants in the transportation of a lot of hams shipped from Chicago.

The opinion of the court contains a statement of the case.

Mr. ARTHUR W. WINDETT, for the appellant, contended, that although a common carrier may issue a bill of lading, in the case of a shipment of goods, after a parol agreement in respect thereto, and containing provisions restricting the liability of the carrier, which were not embraced in the prior parol agreement, the shipper is not precluded thereby from proving what the parol agreement was, and that the shipment was under that agreement, and not under the conditions or stipulations set forth in the bill of lading.

Mr. F. H. WINSTON, for the appellees.

The contract between the shipper and the carrier may be written or oral; it ordinarily consists of a bill of lading or receipt, containing the limitation, which is delivered to the owner, and, being accepted by him, becomes a contract between the parties. Pierce on American R. R. Law, 421; *Walker* v. *York & M. R. R. Co.*, 22 Eng. Law and Eq. 315; *York, New Castle & B. R. W. Co.* v. *Crisk*, 24 Eng. Law and Eq. 396.

Does a bill of lading so issued, and received without objection, constitute such a contract between the parties as to make parol proof of a prior arrangement between the parties as to the same subject-matter incompetent?

Judge PARSONS thus speaks of bills of lading: "This ancient document, in almost universal use among mercantile

nations, undoubtedly determines the rights and duties of the parties, so far as it affects them. Thus it usually excepts 'the perils of the sea,' and then the ship is not responsible for a loss by one of these perils, although it could not be referred to the 'act of God.' And if other exceptions were introduced, they would limit the liability accordingly. So, also, if a ship is hired by a charter party to carry goods for the hirers on a certain voyage or a certain time, and upon certain terms, this charter determines the relation of the parties, and their rights and responsibilities, and not the law of common carriers." 1 Parsons on Contracts, 647.

Again, in Edwards on Bailments, 490, the law is thus laid down:

"A bill of lading partakes of a two-fold character; it is both a receipt and a contract. It is a receipt as to the articles constituting the cargo put on board the vessel; and it is a contract to deliver the same at a certain place and to a certain party. So far as it is a receipt, it is open to explanation, but as a contract it cannot be varied by parol testimony."

"Bills of lading are so far negotiable instruments, that a transfer and delivery of them in good faith vests in the transferee the property not only in the bills, but in the property, as if by constructive delivery. If the bills of lading contain on their face qualifications or restrictions, these will prevail." 2 Parsons on Contracts, 639 and 640, and cases.

The delivery of the property in all cases precedes the giving of the bill of lading, which is in the nature of a receipt for the property, and to allow parol proof of the understanding of the parties before the delivery of the goods to vary the bill of lading afterward given, would completely nullify the effect of such documents, as well as the universal rule of law which excludes parol proof offered to vary written instruments.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case brought against all of these companies for damages alleged to have occurred to eighty tierces of hams, the property of appellant, by delay in transporting the same between Chicago and Wheeling. The declaration is in the usual form for the violation of the common law duty of common carriers. It is alleged that the hams were shipped at Chicago, with a general undertaking to carry and deliver the same, in some of the counts, at Bridgeport, in Ohio, and in others at Wheeling, Virginia, within a reasonable time; and neglect and failure to so deliver the hams is averred, whereby they became and were injured and suffered damage. A summons was served on Charles M. Gray, as freight agent of the several companies. The Michigan Southern and Northern Indiana Railroad company appeared and filed the plea of the general issue. The other companies failing to defend, their default was entered. Afterward, a trial was had by the court and a jury, resulting in a verdict in favor of the company, upon which the court rendered a judgment, from which plaintiff below appeals to this court.

It appears from the evidence, that, on the 20th day of February, 1864, appellant, by Brown, his agent, saw the general freight agent of the Michigan Southern and Northern Indiana railroad, in reference to shipping these hams. Being assured by the agent that they would be shipped through in not exceeding seven days, the hams were sent on that understanding to the freight depot of the company for shipment on the 22d of the same month. The agent was informed of the danger of the heating of the hams, and the importance of dispatch in their transportation. The evidence shows that the hams were well packed, and not liable to heat in twenty days, at that season of the year. On the 24th a freight bill was made out, and whether inclosed to appellant by mail or was delivered to some one else, does not appear. Brown, who shipped the hams, says he has no recollection of having ever seen it before the time of the trial.

Brown testifies, that, on the twentieth, when he made the contract for the shipment of the hams, there was no limitation

in the agreement to ship the hams to Wheeling. But in the freight bill, dated on the 24th, the company limits their liability to their own line, and provide against liability for delays growing out of over accumulation of freights on the road. It appears that the hams did not reach Wheeling until as late as the 4th of May, 1864; and when received, they were in a damaged condition, having heated and spoiled, so as to be worth some seven cents less per pound. After all of the evidence was heard, the court directed the jury to find a verdict for the railroad company, to which appellant excepted.

This presents the question whether the testimony of Brown was admissible, as tending to contradict the freight bill, as that seems to be the only ground upon which the jury were directed to find for the company. We think his evidence was admissible, and should have gone to the jury, and they should have been left to say whether the hams were shipped under the verbal contract of the 20th of February, which contained no limitations or conditions, or under the written freight bill of the 24th, which did contain limitations on their liability. If the shipment was made under the verbal agreement, the company would have been bound to deliver within the specified time, or been liable for all damages occasioned by failing to perform their agreement. On the other hand, they would only be liable according to the terms of the freight bill. And inasmuch as appellant did not sign that agreement, either in person or by agent, and as it does not appear to have been delivered to appellant or his agent, we think it was a question proper to be left to the jury to say under which contract the hams were shipped. The agreement seems to have been made four days, and the hams were delivered two days before the date of the freight bill. In such a case it is a question for the determination of the jury, whether the contract of the freight bill was accepted by appellant.

If the hams were shipped under the verbal contract, the making and signing of the freight bill, with conditions and limitations, would not alter their liability under the verbal agreement, unless it was accepted as the contract of the parties.

And it would be for the jury, as it bears date subsequent to the first agreement and the delivery of the freight, from all of the circumstances of the case, to say whether the freight bill was accepted as the agreement. It would have been an easy matter for the company, after making the contract, to have filled out and forwarded by mail, to the consignee, this freight bill, entirely different from the original contract, and the company could not by that means change their liability, unless such a change was accepted or ratified by the other party. These were questions for the determination of the jury and not of the court. Nor does our practice warrant the court in finding the facts and directing the jury how to find their verdict. In this the court below erred.

It was urged in affirmance, that these companies were improperly joined as defendants. This is an action in tort, and no reason is perceived why the general rule should not apply to this as well as other cases of that character, that on the trial a verdict may be found against those found guilty, and an acquittal of those not guilty of the wrong. Such is believed to be the well established practice of the courts of Great Britain as well as those of this country.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*