## The Adams and Westlake Mfg. Co.
### v.
### Carlos C. Cook.

1. Written contract—Extrinsic evidence.—In a written contract where the language is equivocal or doubtful, it is proper to look to extrinsic circumstances, particularly those surrounding the execution of the instrument, to ascertain the meaning the parties intended to convey by the language employed to express their agreement. But the intention which the courts will enforce must be that which is expressed in the writing.

2. Question of construction.—The interpretation or construction of written contracts is a question of law for the court. Where resort is had to extrinsic evidence for light as to the proper construction of the writing, the court may require the jury to find the facts established by such evidence, but it should itself determine the proper construction to be given to the instrument in the light of the facts as submitted to the jury.

3. Instructions.—As the instructions in this case not only authorized the jury to find an intention not expressed in the writing, but also to find one directly contradictory to the one expressed, they were erroneous.

Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding. Opinion filed March 3, 1885.

This was a suit in assumpsit, brought by Carlos A. Cook against the Adams & Westlake Manufacturing Company upon the following instrument:

"Chicago, June 23, 1879.

"In order to secure general newspaper advertising, we hereby authorize C. A. Cook & Company, advertising agents, of Chicago, Illinois, to make all advertising contracts in our names, with the publishers of different newspapers, also with the union or co-operative publishers of newspapers, in accordance with the agreement or form for that purpose. The number of times that our advertisement is to be inserted, to be left to the discretion of C. A. Cook & Company, and the contracting parties, but not less than two insertions in each paper. In consideration of C. A. Cook & Company making such contracts, we hereby agree to pay C. A. Cook & Company the

The Adams and Westlake Mfg. Co. v. Cook.

sum of two dollars for each and every agreement made by them with such publishers or parties, on delivery to us of such contracts. Contracts may be made for our advertising in any newspaper in the United States. We also agree to furnish all cuts or stereotypes to all publishers for all advertising.

"The Adams & Westlake Manufacturing Company,
by Armour."

The plaintiff, shortly after the date of said instrument, procured and delivered to the defendant advertising contracts to the number of 1,480, or thereabouts, said contracts being executed by filling up and signing a blank form, furnished by the defendant to the plaintiff for that purpose. All of these contracts, with the exception of about 26, were signed by the proprietors of certain union or co-operative publishing establishments, who were each engaged in editing and printing one side of a large number of sheets and furnishing the same to the proprietors of weekly country papers, to be used by them in publishing their respective papers. Of said contracts 732 were signed by one A. N. Kellogg, of Chicago; 141 by the Cincinnati Newspaper Union; 368 by the Chicago Newspaper Union; 116 by the Southern Newspaper Union, and 77 by the Milwaukee Newspaper Union. The following is a copy of one of the contracts signed by Kellogg, all the other contracts being like it, except as to the name and location of the newspaper mentioned and the signature, and except that, in case of the few contracts made directly with the proprietors of newspapers, the words, "on the co-operative side" were omitted.

ORIGINAL CONTRACT AND ORDER.

Chicago, June 23, 1879.

We hereby agree to furnish to the order of the publisher or publishers below named one No. 3, or 3-burner, non-explosive oil stove and furniture, on the terms and conditions of the contract hereunder written and printed.

The Adams & Westlake Mfg. Co.

We hereby agree to insert in the Vedette, published at Panora, State of Iowa, the advertisement, as per copy, of the Adams & Westlake Mfg. Co., Chicago, Ill., to be pub-

lished weekly (on the co-operative side) for the term of two weeks.

The payment for above advertising to be made by said The Adams & Westlake Mfg. Co., in a No. 3, non-explosive oil stove and furniture, as described on the margin of this contract.

### DESCRIPTION.

[Our No. 3, or 3-burner, non-explosive oil stove, with patent 2-hole top oven, Cornwall's patent broiler, flat-iron, heater (holds 3 irons). Price $16.50, all complete. This contract will be honored in the hands of any person to whom it may be indorsed or disposed of, and the goods will be furnished the same as if the contract is held by the publisher or publishers.]* Price $16.50, the same being the regular price. $10 of the price of the said stove is to be remitted by the publisher or holder of this contract to said The Adams & Westlake Manfg. Co., Chicago, when the stove is ordered. The balance is to be in full payment of the advertising done under this contract.

(Signed)       A. N. KELLOGG.

Dated 7—14, 1879.

The evidence tended to show that the plaintiff, after obtaining the execution of said contracts, caused circulars to be sent to the proprietors of said several newspapers, seeking to induce them to avail themselves of the provisions of said contracts, by remitting to the defendants $10 and receiving therefor one of said oil stoves as provided in the contracts, but it appears that said circulars were substantially without result. Evidence was also given tending to show that, during the negotiations which resulted in the contract sued on, the plaintiff told the defendant that, in order to obtain the insertion of said advertisements on the " co-operative side" of said newspapers, he would be obliged to pay to said co-operative publishers, a portion of his commissions. It appears, also, that the entire expense of publishing said advertisements in said co-operative newspapers was paid by the plaintiff himself, in cash, to the several parties executing the contracts.

* The matter within brackets was on the margin of the contract.—REP.

The principal controversy in the case arose upon the interpretation to be given to the contract sued on, and the court thereupon, at the instance of the plaintiffs, gave to the jury the following instructions:

6. "If the jury believe, from the evidence, that at the time the defendant executed the written authority to the plaintiff, which has been offered in evidence, both the plaintiff and defendant intended that such contracts as the plaintiff should make under such authority with the union or co-operative publishers of newspapers, should, in fact, be made with publishers who should receive payment for the advertising therein specified in money, and not according to the terms of such printed contracts, then the jury is instructed that the making of such contracts upon said forms would be a compliance with his contract by the plaintiff, and would entitle him to be paid at the contract price for each contract so made and delivered to the defendant.

7. "In determining whether the plaintiff and defendant intended, at the time the defendant executed the written authority to plaintiff which has been offered in evidence, that the plaintiff should, in making the contract therein contemplated with the union or co-operative publishers of newspapers, in fact, (pay) such publishers for doing the publishing, in money, and that such was the intention of both parties at the time, it is proper for the jury to consider all that occurred between the plaintiff and defendant after such contracts were made, and at and after the time the plaintiff had claimed compensation from defendant therefor."

The jury found for the plaintiff and assessed his damages at $3,594.36, and the court, after denying the defendant's motion for a new trial, rendered judgment upon the verdict.

Messrs. FLOWER, REMY & GREGORY, for appellant; as to evidence of previous conversations being inadmissible to explain written contract, cited Mercantile Ins. Co. v. Jaynes, 87 Ill. 199; Ludeke v. Sutherland, 87 Ill. 481; Weaver v. Fries, 85 Ill. 356; Andrews v. Mann, 92 Ill. 40.

It is the duty of the court to construe a written contract:

Kamphouse v. Gaffner, 73 Ill. 453; Belden v. Woodmansee, 81 Ill. 25; Wilcox v. Dodge, 12 Bradwell, 517.

Mr. FREDERICK ULLMANN, for appellee; as to the admission of parol evidence, cited Powell v. Biddle, 2 Dallas, 70; Scanlan v. Wright, 13 Pick. 523; Brewster v. McCall, 15 Conn. 274; Hadden v. Shontz, 15 Ill. 581; C. & Gt. E. R. R. Co. v. Vosburgh, 45 Ill. 312; Leavers v. Cleary, 75 Ill. 349; Turpin, v. B. & O. R. R. Co., 105 Ill. 11; Batavia Mfg. Co. v. Newton Wagon Co., 91 Ill. 239; L. & N. R. R. Co. v. Koelle 104 Ill. 460; Piper v. Connelly, 108 Ill. 512.

BAILEY, J. It is a very familiar principle that where the parties to a contract reduce the same to writing, the law presumes that all the terms and conditions of the agreement are fully incorporated into and become a part of the written contract, so that the writing becomes the only evidence of the *terms* of the agreement. It follows that the intention of the parties is to be ascertained solely from a proper construction or interpretation of the language employed by the parties in the instrument itself. Where that language is plain and unambiguous, it must be enforced according to its obvious meaning, but where it is equivocal or doubtful, it is proper to look to extrinsic circumstances, particularly those surrounding the execution of the instrument, to ascertain the meaning the parties intended to convey by the language employed to express their agreement. But the intention which the courts will enforce must, after all, be that which is expressed in the writing. An intention of either or both the parties different from the one so expressed can not be regarded.

It is also a well settled rule of law, that the interpretation or construction of written contracts is a question of law for the court and not one of fact for the jury. Nor is the rule different where resort is had to extrinsic evidence for light as to the proper construction of the writing. There, while the court may require the jury to find the facts established by such evidence, it should itself determine the proper construction to be given to the instrument in the light of the facts so submitted to the jury.

By the sixth and seventh instructions, the jury were required to find from the evidence, whether the parties, at the time of making the contract sued on, intended that the plaintiff should make advertising contracts with union or co-operative publishers of newspapers, not in accordance with the terms of the printed forms of agreement, but that he should, in fact, undertake to pay such publishers in money for publishing the advertisement; and the jury were further instructed that, if such was their intention, then contracts made by the plaintiff with such parties for advertising, to be paid for in money, were in compliance with the terms of the contract sued on.

These instructions not only authorized the jury to find an intention not expressed in the writing, but also to find one, as it seems to us, directly contradictory to the one expressed. While the terms of the contract are somewhat obscure, yet enough appears, we think, to exclude an intention to authorize the plaintiff to contract for advertising to be paid for in cash. By the express terms of the instrument, all advertising contracts were to be made " in accordance with the agreement or form for that purpose." A printed blank form of advertising contract was at the same time furnished to the plaintiff by the defendant, and it is clearly shown by the evidence and is not disputed, that said form is the one referred to in said instrument. This blank constituted a form of a contract not only for advertising, but for advertising to be paid for in a particular way, viz., by applying it in part payment for the defendant's oil stoves. The blank was manifestly framed in pursuance of a scheme on the part of the defendant to advertise and make sale of its oil stoves at the same time, and it is clear that procuring advertising to be paid for in cash, was directly subversive of one part of this scheme.

By the written agreement, then, the plaintiff was limited to obtaining contracts for advertising, to be paid for only by giving credit upon the purchase price of oil stoves. It was not enough that the printed blanks were used in drawing up and executing the contracts.

The provision was, that the contracts should be in accordance with the blank form of agreement, that is, that such

should be their actual character. Now it is too plain for argument that the intention submitted to the jury by the instruction, if proved, was totally at variance with the intention of the parties thus expressed in their written agreement.

The instructions were erroneous in directing the jury to find the intention of the parties from the evidence, when such intention was a question of law to be determined by the court upon a proper construction of the written instrument. The sixth instruction was also erroneous in holding that acts done in pursuance of the intention submitted by the hypothesis contained in that instruction, would be a compliance with the agreement sued on, thus permitting the very terms of the writing to be altered and contradicted by parol evidence.

For the error in giving said instructions, the judgment will be reversed and the cause remanded.

Judgment reversed.