# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

JOHN R. FOULKS *et al.*

*Opinion filed June 19, 1901.*

1. CARRIERS—*railroad company is liable to shipper for negligence of its employees.* A railroad company which owns and operates its own track between two given points is liable to persons shipping freight over its line for its own acts of negligence or the negligence of its employees.

2. SAME—*when contract between carriers does not create the relation of agency.* A contract between connecting railroad companies, which provides that they shall operate their respective lines for their mutual advantage "as allied lines of transportation," all damages for injury to freight to be adjusted between them according to the custom of railroad companies, etc., does not create the relation of agency between them, but each company, under such contract, is liable for the torts and negligence of its own employees, whether liable for the torts and negligence of the other or not.

3. SAME—*carrier receiving freight to be carried beyond its line is the agent of owner.* Where freight is to be shipped over several lines of railroad, the first and each succeeding carrier becomes the agent of the owner of the goods to make delivery to the next carrier, and it must do so to avoid liability.

4. SAME—*carrier acting as agent for another is liable to third parties for its own misfeasance.* If one railroad company is acting as agent for another in the handling of freight shipments, the company so acting as agent is liable to third parties for the misfeasance of its own employees.

5. SAME—*when mistake in billing is an act of misfeasance.* Billing potatoes in car-load lots *via* a specified line of steamers from a certain intermediate point is an act of positive misfeasance where the forwarding carrier had in its possession rate-sheets routing such shipments all-rail and stating that the steamer line would not accept bulk freight, and such forwarding carrier is liable to the shipper for the result of the delay occasioned by the mistake, even though it was acting as agent for one of the companies forming the transportation line over which the shipment was routed.

6. ACTIONS AND DEFENSES—*court may enter judgment against part of defendants in action of tort.* In an action for tort it is not improper for the court to enter judgment against one defendant and grant a new trial and permit the suit to be dismissed as to the others, even though the verdict was against all of the defendants.

7. LAW AND FACT—*whether written contract creates relation of agency is a question of law.* Whether a written contract creates the relation of principal and agent between the parties is a question of law for the court.

8. PRACTICE—*proper method of objecting to testimony in form of deposition.* If the objection to an answer given in a deposition taken upon notice is one which may be obviated by better evidence, the proper method of urging such objection is by motion, before trial, to suppress the deposition.

*Illinois Central Railroad Co.* v. *Foulks,* 92 Ill. App. 391, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

The following statement of facts is made by the Appellate Court in their decision of this case:

"This is an action on the case, brought by appellees against appellant, together with the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, the Chesapeake and Ohio Railway Company, the Richmond and Danville Railroad Company, and the Pennsylvania Railroad Company. The jury, before whom the case was

tried, brought in a verdict of guilty against the Chesapeake and Ohio Railway Company, the Pennsylvania Railroad Company and the appellant, and assessed the plaintiffs' damages at $1913.31. At a former trial a jury had found the Cleveland, Cincinnati, Chicago and St. Louis Railway Company not guilty, and service of process was never had against the Richmond and Danville Railroad Company. The verdict of the jury in the present case, therefore, found all the remaining defendants guilty. A motion for a new trial was granted as to the others, and the suit dismissed as to them, but the motion was overruled as to appellant. The circuit court denied a motion in arrest, and entered judgment for the full amount of the verdict against appellant alone.

"The material facts are, that in April, 1890, appellees, who were doing business at Malvern, Iowa, shipped a quantity of potatoes to Philadelphia. It appears that the route chosen was not the most direct. But the agent of the Omaha and St. Louis Railway Company at Malvern induced appellees to ship over the latter road, promising, it is said, to get the potatoes to Philadelphia within five days. They were billed by the agent of the Omaha and St. Louis Railway Company at Malvern, Iowa, to go by 'Kanawha Dispatch' from East Dubuque, Iowa. The 'Kanawha Dispatch' is said by appellant's counsel to be 'a combination of divers roads for the transmission of freight from western and eastern points,' and it is stated that the appellant is not a member of that combination. It is conceded, however, that 'the freight agent of the Illinois Central Railroad Company, and his corps of clerks transact all the routine business of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, and the Kanawha Dispatch at Chicago,' but it is insisted that they get all their instructions, orders, etc., in relation to such business from the general agent of the so-called 'Big Four' company, and from the 'Kanawha Dispatch' offices, and not any from appellant.

"The two car-loads of potatoes in question came to appellant's yards in Chicago in due course, and were immediately transferred, as directed by the transfer slips, and forwarded by appellant over its own line to Kankakee the same day. It is not disputed that there was no delay in transit while the potatoes were on appellant's tracks. But there is some evidence, tending to show unnecessary delay on the part of the Chesapeake and Ohio, and of the Pennsylvania companies. The claim against appellant is, that a mistake was made by its employees at Chicago in billing, by which the potatoes were caused to be shipped *via* the Clyde line of steamers, instead of being forwarded all-rail. The way-bills were made out by appellant and were erroneous. They were made to read 'over Illinois Central and Chesapeake and Ohio to Richmond, for Philadelphia, *via* Clyde line of steamers.' They should have been billed 'to Charlottesville, Alexandria, all-rail to Philadelphia.' The error occurred through a mistake, inadvertently committed by the agent or employee at Chicago, who made out the bills. The result was that, upon arrival at Richmond, the potatoes, which were in bulk, were refused by the Clyde line of steamers, because, as the published tariff of rates of the 'Kanawha Dispatch' specifically states, bulk freight is not taken on the Clyde line. At Richmond the way-bills were corrected, and the potatoes at length forwarded to Philadelphia. There they were refused by the consignee on account of their condition, caused, it is said, by continued exposure to warm weather while delayed *en route.* There is evidence, tending to show that the cars, while in actual transit, made 'fair average time,' and that the delay was caused by the mis-billing."

From the judgment entered by the circuit court against appellant an appeal was taken to the Appellate Court, and the judgment has been there affirmed. The present appeal is prosecuted from the judgment of affirmance, so entered by the Appellate Court.

JOHN G. DRENNAN, (J. M. DICKINSON, of counsel,) for appellant:

For a mere nonfeasance an agent is not liable to any one but the master. Before the agent can be made legally liable to a third party the act of the agent must amount to positive misfeasance. 1 Am. & Eng. Ency. of Law, (2d ed.) 1133, 1134, and notes.

An agent is not liable to any one but his principal for the acts of his (the agent's) servants or for the acts of those employed by him in the service of his principal. *Stone* v. *Cartwright*, 6 T. R. 411; Story on Agency, (8th ed.) sec. 217*a*.

A servant or agent is not liable to a third person for a failure to perform the master's obligations to such third person. 14 Am. & Eng. Ency. of Law, 873, note 5.

A railroad company may act as an agent in the line of railroad business. 5 Thompson on Corp. sec. 5833.

In an action of tort against several defendants, if the jury return a joint verdict judgment should be rendered against them jointly. 11 Ency. of Pl. & Pr. 857.

A joint verdict not supported by evidence as to one must be set aside as to all. *Sperry* v. *Dickinson*, 82 Ind. 138; *Graham* v. *Henderson*, 35 id. 195.

A judgment of court must follow and correspond with and be only the legal result of the facts found in the verdict. The verdict is the basis of the judgment. *Mayfield* v. *State*, 40 Tex. 290; 1 Freeman on Judgments, (4th ed.) sec. 50*d*; *Thompson* v. *Albright*, 14 S. E. Rep. 1120.

The court cannot look to the evidence to determine what judgment it will render, but must look to the verdict alone. The judgment, if any is rendered, must follow the verdict. *Akin* v. *Jefferson*, 65 Tex. 137; *Fields* v. *Williams*, 91 Ala. 506; *Eams* v. *Stevans*, 26 N. H. 123.

If perishable goods are injured in transit on account of their own intrinsic qualities, the railway company is not liable for the goods so injured. Hutchinson on Carriers, (2d ed.) sec. 220.

John M. Zane, for appellees:

Where two railroads have a continuous line, dividing the freight between them, each railroad remains liable for negligence upon its own line. *Ellsworth* v. *Tartt*, 26 Ala. 733; *Irvin* v. *Railway Co.* 92 Ill. 103; *Peterson* v. *Railway Co.* 80 Iowa, 92; *Hart* v. *Railway Co.* 8 N. Y. 37; *Wyman* v. *Railroad Co.* 4 Mo. App. 35; *Hill Manf. Co.* v. *Railway Co.* 104 Mass. 122; *Railway Co.* v. *Spratt*, 2 Duv. 4; *Insurance Co.* v. *Railroad Co.* 104 U. S. 146.

Mistake by mis-billing that causes delay renders the railroad liable. *Railway Co.* v. *Niemann*, 84 Ill. App. 272.

If an agent is guilty of misfeasance, as distinguished from nonfeasance, the agent is liable to a third party injured by the act. *Bell* v. *Josselyn*, 3 Gray, 309; 1 Am. & Eng. Ency. of Law, (2d ed.) 131, 135.

The plaintiff in an action of tort can take judgment against as many defendants as he pleases, and may dismiss as to other defendants served, at any time before final judgment. *Boston* v. *Simmons*, 150 Mass. 461; *Stainbrook* v. *Duncan*, 45 Ill. App. 344; *Matthews* v. *Railroad Co.* 56 N. J. L. 34; 6 L. R. A. 629, note.

In actions of tort the court may enter judgment as to one without disposing of the case as to others. The defendant against whom judgment is taken cannot assign the fact as error. *Davis* v. *Taylor*, 41 Ill. 405.

The court may grant a new trial as to certain defendants found guilty of tort by the verdict, and enter judgment as to the others. *Albright* v. *McTighe*, 49 Fed. Rep. 817; *Houston* v. *Bruner*, 39 Ind. 376; *Smith* v. *Foster*, 3 Cold. 147; *Lee* v. *Fletcher*, 46 Minn. 49; *Terpenning* v. *Gallup*, 8 Iowa, 75.

Mr. Justice Magruder delivered the opinion of the court:

*First*—The evidence in this case tends very strongly to show that the delay in the transportation of the potatoes from Malvern, Iowa, to Philadelphia, Pennsylvania,

was caused by the error of the Illinois Central Railroad Company, appellant herein, in improperly billing the potatoes upon their arrival at Chicago. The way-bills, made out by the appellant's agent at Chicago, read as follows: "Over Illinois Central and Chesapeake and Ohio to Richmond, for Philadelphia, *via* Clyde line of steamers." The potatoes should have been billed to go all-rail *via* Charlottesville, Virginia, or "to Charlottesville, Alexandria, all-rail to Philadelphia." The potatoes were in bulk, and the rate-sheet, which was in the possession of the appellant's agent, showed that such freight must go all-rail *via* Charlottesville, Virginia, and that the Clyde line of steamers did not take bulk freight. The result was that, when the cars reached Richmond, the freight was refused by the Clyde line of steamers, and the cars, after a considerable amount of telegraphing and correspondence in relation to the error, had to be shipped back from Richmond to Charlottesville, and from there on, by way of Alexandria, to Philadelphia. In consequence of the delay caused by this mistake, the cars did not arrive in Philadelphia until about May 6 and 8, respectively, when they should have arrived there certainly by the 25th day of April. The testimony tends to show, that the weather at that time was hot in Virginia, and that a delay of a few days causes potatoes shipped under such circumstances to sprout, so that they become spoiled. The potatoes were spoiled when they reached Philadelphia, although the proof tends to show that they were in a first-class condition when they left Malvern. They lay in Philadelphia because of the refusal of the consignee to receive them, and were there sold for freight charges. That an error was made by appellant's agent or employee in Chicago in the billing of the freight is established by testimony, which, so far as we have been able to discover, is uncontradicted by the appellant.

The first contention, however, of the appellant is that, in billing this particular freight, the appellant acted

as the agent of the Cleveland, Cincinnati, Chicago and
St. Louis Railway Company; and that, on this account,
the Illinois Central Railroad Company, if liable to any-
body, is only liable to its principal, the Cleveland, Cin-
cinnati, Chicago and St. Louis Railway Company.    It is
admitted, that the billing was the act of the agent or ser-
vant of the appellant, but it is said that the appellant,
being the agent of the Cleveland, Cincinnati, Chicago and
St. Louis Railway Company, is not liable to the appel-
lees, who are third persons, but only to its principal for
the act of billing thus performed by its own agent or ser-
vant.    In other words, the contention of the appellant is,
that whatever right of action in this case appellees may
have is against the Cleveland, Cincinnati, Chicago and
St. Louis Railway Company, and not against the appel-
lant, by reason of the alleged agency thus insisted upon.
At the close of plaintiffs' evidence on the trial below,
the defendant then moved to exclude the evidence; and
again, at the close of all the evidence in the case, the
appellant, the Illinois Central Railroad Company, asked
the court to give a written instruction to the jury to find
the appellant not guilty.    The court refused the motion
to exclude the evidence, and also refused to give the in-
struction so asked.    The contention here made is claimed
to arise out of this action of the court.

Upon the trial below, the appellant introduced in evi-
dence a written contract, bearing date June 24, 1886, exe-
cuted between itself, as party of the first part, and the
Cincinnati, Indianapolis, St. Louis and Chicago Railway
Company, as party of the second part.    It is conceded,
that the Cleveland, Cincinnati, Chicago and St. Louis
Railway Company is the successor of the Cincinnati,
Indianapolis, St. Louis and Chicago Railway Company.
This written contract consists, in addition to the recital
part thereof, of ten articles; and, so far as the relation
between the parties to the contract is concerned, it is
necessary to give a construction to the terms of the con-

tract. Although there are some expressions in the con-
tract, which may be interpreted as indicating that the
Cleveland, Cincinnati, Chicago and St. Louis Railway
Company, or its predecessor, was principal, and the Illi-
nois Central Railroad Company its agent, yet, upon a
consideration of the whole contract and all its parts, we
are of the opinion that it does not show the relation of
principal and agent to exist between the parties to it.

The contract recites, that "the respective parties
hereto own and operate parts of a continuous line of
railroad connecting at Kankakee, and extending from
the city of Chicago in the State of Illinois to the city
of Cincinnati in the State of Ohio." Each party is thus
stated to own and operate its own part of such continuous
line of railroad. A railroad, which owns and operates
its own track between two given points, is itself liable
to persons, shipping freight over it, for its own acts of
negligence, or the negligence of its employees. Article 1
of the contract provides as follows: "It is agreed that
the parties hereto shall operate their respective lines of
roads, so connecting at Kankakee, for their mutual ad-
vantage, as allied lines of transportation." By the terms
of the contract each party is thus to operate its own line
of road, and both parties are to operate their respective
lines as allied lines of transportation. Their relation
is thus clearly indicated .as allies, and not as agent or
principal the one for the other. By the second article
the Cleveland, Cincinnati, Chicago and St. Louis Railway
Company, otherwise known as the "Big Four," is required
to do all its business both freight and passenger over the
Illinois Central road between Kankakee and Chicago.
The third article gives the control of the rates to the
"Big Four." The fourth article requires the Illinois Cen-
tral Railroad Company to furnish all necessary terminal
facilities; but the cars, employed in the business of the
line, are to be moved and handled by each party upon and
over its own road, with its own engines, by its own train-

191—5

men; and mileage is allowed to each road for its cars run over the other road. The fifth, sixth and seventh articles refer to the passenger business. The eighth article provides, that freight earnings shall be divided between the two roads on traffic between Chicago and Cincinnati, twenty-five per cent to the Illinois Central Railroad Company, and seventy-five per cent to the "Big Four." The tenth article provides, that "all costs and damages incurred on account of loss or injury to freight shall be adjusted by the parties according to the general rules, usages and customs which shall prevail at the time in the interchange of freight traffic between the railroads of the United States." These provisions indicate that there was no intention to create an agency. As to all injuries to freight, and all mistakes of any kind in regard to freight, causing damage, the two roads were to be separately responsible, and not one as agent of the other. We do not decide that, under the terms of this agreement, a partnership existed between the two roads, although there was a unity of interest between them and an arrangement for the division of freights between them. We are satisfied that, under the authorities, each road is responsible, under the arrangement embodied in the contract, for the torts and negligence of its own agents or employees, whether each was responsible for the torts or negligence of the other, or not. (*Irvin* v. *Nashville, Chattanooga and St. Louis Railway Co.* 92 Ill. 103; *Peterson* v. *Railway Co.* 70 Iowa, 92; *Insurance Co.* v. *Railroad Co.* 104 U. S. 146; *C., H. & D. Ry. Co.* v. *Spratt,* 2 Duv. 4.) In *C., H. & D. Ry. Co.* v. *Spratt, supra,* it was held that: "Where several parties are associated for the transportation of freight from Louisville to New York, executing through bills of lading, and taking through freight, they will each be chargeable as common carriers between those points; and, in such cases, public justice and commercial policy require a stringent construction against any intermediate irresponsibility."

Under the circumstances, shown by the evidence in this case, the appellant, when it received the freight in question from the railroad company bringing it to Chicago, was undoubtedly the agent of the appellees, rather than the agent of the "Big Four." When the appellant received the freight in Chicago, it received it to be carried to a point beyond the terminus of its route, and to be delivered by it to a connecting carrier to be carried on its way to Philadelphia. Hutchinson, in his work on Carriers (2d ed. sec. 108), says: "When goods are delivered to the carrier for the purpose of being carried to a point beyond the terminus of its route, and for that purpose to be delivered by him to a connecting carrier in order to continue the carriage, or where it becomes necessary for that purpose to make successive deliveries from one to another upon a continuous line or succession of carriers, the first and each succeeding carrier becomes the agent of the owner of the goods to make delivery to the next carrier; and it is incumbent upon him to do so, not only to relieve himself from further liability, but because it is a duty which he owes to the owner, and which he has assumed with the acceptance of the goods. He is the party in charge of them, and the only one with whom the succeeding carrier can make the necessary arrangements, and stands towards them for this purpose in the position of an owner."

But, even if it be conceded that the appellant was the agent of the "Big Four," as is here claimed, it was an independent contractor, and, as such, liable for its own acts. Although the "Big Four" controlled the rates, the men, who did the work, were paid by the Illinois Central Railroad Company. It attended to the work of billing the cars at Chicago. It carried the freight to the end of its line by its own employees. As one of the witnesses says: "The Illinois Central crew hauled the freight from Chicago to Kankakee." Appellant and the "Big Four" evidently were running a continuous line, but each man-

aged that part of the line which was its part of such continuous line, and furnished all the cars, motive power, employees and depots for that part. Each company was bound to pay for losses occurring on its own line. The "Big Four," although controlling the rate of charges, did not pay the employees of the appellant; it did not super-intend their work in the office; it did not direct the running of the trains; it did not handle the freight; it did not make out the way-bills. The appellant, being thus an independent contractor, even if it stood in the relation of an agent to the "Big Four" as its principal, was liable to third parties for its own negligence. (*Hale* v. *Johnson*, 80 Ill. 185; *Kepperly* v. *Ramsden*, 83 id. 354; *Pfau* v. *Williamson*, 63 id. 16; *Scammon* v. *City of Chicago*, 25 id. 424; *Hillyard* v. *Richardson*, 3 Gray, 349). Such an independent contractor is liable to a third party for the torts of its employees. (*Blake* v. *Ferris*, 5 N. Y. 48).

It is insisted, in behalf of the appellant, that the appellant, as agent of the "Big Four," was guilty of a mere non-feasance, and that an agent is not liable to any one but the master for a mere non-feasance. Counsel for the appellant refer to authorities, which hold that, "before the agent can be liable to a third party, the act of the agent must amount to positive mis-feasance." (1 Am. & Eng. Ency. of Law,—2d ed.—pp. 1133, 1134, and notes). If it be assumed that this is a correct statement of the law, and that the appellant acted merely as the agent of the "Big Four" in billing the freight in question, we think that appellant must be held to be liable to appellees as third persons, upon the ground that its act was an act of mis-feasance, and not merely of non-feasance. Where an injury results from such an act of negligence on the part of the agent as partakes of the character of a mis-feasance, the agent is personally liable to third persons, "the actual perpetrator of the positive wrong not being permitted to relieve himself from liability by showing that the wrong was done while he was acting

in the course of his employment as agent for another." (1 Am. & Eng. Ency. of Law,—2d ed.—pp. 1134, 1135). Bouvier defines non-feasance to be "the non-performance of some act which ought to be performed." He defines mis-feasance to be "the performance of an act, which might lawfully be done, in an improper manner, by which another person receives an injury." The appellant neg-. ligently billed the freight, so as to make it go to Richmond for Philadelphia *via* the Clyde line of steamers when it had in its possession rate-sheets, which showed that the Clyde line of steamers would not receive freight in bulk, such as this freight was. Under these circumstances, the mis-billing was an act of positive mis-feasance.

*Second*—The second contention of the appellant is, that the court below erred in granting a new trial to the Chesapeake and Ohio Railway Company, and the Pennsylvania Railroad Company, and permitting the suit to be dismissed as to these companies, and in entering judgment against the appellant alone, when the verdict was against the three companies, to-wit: the Chesapeake and Ohio Railway Company, the Pennsylvania Railroad Company, and the Illinois Central Railroad Company.

While the authorities are somewhat conflicting upon this branch of the case, yet the weight of authority sustains the action of the trial court. A plaintiff in an action of tort may take judgment against as many defendants as he pleases. The liability of tort feasors is joint and several, and the person injured can select which of them he chooses to have judgment against. (*Stainbrook* v. *Duncan*, 45 Ill. App. 344; *Boston* v. *Simmons*, 150 Mass. 461).

In the Encyclopedia of Pleading and Practice (vol. 11, p. 853) it is said: "In actions of tort against several defendants, a judgment by default may be taken against a portion of the defendants though the rest make sufficient plea. And the court may, after the verdict, grant a new trial to one or more of several defendants if satisfied that

they were wrongly convicted and may render judgment upon the verdict as to the remainder." This statement of the text-writer is sustained by the following authorities: *Albright* v. *McTighe,* 49 Fed. Red. 817; *Terpenning* v. *Gallup,* 8 Iowa, 75; *Hayden* v. *Wood,* 16 Neb. 306; *Heffner* v. *Moyst,* 40 Ohio St. 112; *Houston* v. *Bruner,* 39 Ind. 376; *Lee* v. *Fletcher,* 46 Minn. 49; *Smith* v. *Foster,* 3 Cold. 147.

In *Terpenning* v. *Gallup, supra,* the Supreme Court of Iowa say: "The objection now is that, if the verdict was set aside as to one of the defendants, it should have been as to all—that it was an entirety—and that the judgment must strictly follow the verdict. We do not so understand the law. In this action, the jury could have found all the defendants guilty, or all not guilty, or a part guilty and the others not guilty. And after verdict, it was perfectly competent for the court to grant a new trial to one or more of the defendants, if satisfied that they were improperly convicted, and render judgment upon the verdict as to the others."

In the case at bar, appellant and the other two railroad companies against whom the verdict was rendered, each filed a separate plea. In *Heffner* v. *Moyst, supra,* it was held that it was not error, or to the prejudice of one of the defendants in an action of tort, to overrule his motion for a new trial, while sustaining a separate motion by the other defendants to set aside the verdict as to them.

In *Hayden* v. *Wood, supra,* which was an action of tort against a husband and wife, and where separate motions were made by them and overruled, and the contention in the Supreme Court was that, if the verdict against the wife could not be sustained, the husband also was entitled to a new trial, the court said: "If no other reason for the opposite rule could be assigned, we think one can be found in the separation of their motions for a new trial and their petitions in error, by which they have separated and severed their rights and interests. But

to our minds it is clear that the results claimed by the plaintiffs in error do not necessarily follow. While it is true that the defendant in error by his petition has proceeded against both jointly, it by no means follows that the verdict must be against both or neither. * * * A cause of action against both the plaintiffs in error is stated in each (of certain counts;) the proof makes a case against one of the plaintiffs in error, but in our opinion not as against the other. Could not the jury have found against one and not the other, and their verdict stand? If so, why cannot a new trial be granted to one and not the other? * * * Tort feasors are jointly and severally liable. An action may be maintained against one or all at the option of the injured party. Several and separate judgments may be rendered in separate actions, but the satisfaction of one satisfies all, and to this extent only may their liability be said to be joint."

Section 23 of the Practice act of Illinois provides that, "at any time before final judgment in a civil suit, amendments may be allowed on such terms as are just and reasonable, * * * discontinuing as to any joint plaintiff or joint defendant." (3 Starr & Cur. Ann. Stat.—2d ed.— p. 3000). In *Davis* v. *Taylor*, 41 Ill. 405, we held that, inasmuch as all torts are joint and several, there can be a judgment against one defendant without disposing of the case as to the others, and the defendant, against whom the judgment is taken, cannot assign the fact as error. In the latter case we said (p. 408): "It was held in *Dow* v. *Rattle*, 12 Ill. 373, which was an action of assumpsit, to be error to render final judgment against part of the defendants, without disposing of the case as to the others. * * * We are of opinion, that the rule should not be applied to actions of tort. There is no reason for thus applying it, because there is no contribution among wrongdoers. Taking a judgment against a portion of the defendants amounts to a dismissal of the case as to the residue, and, in actions *ex delicto*, this may be done.

If the mode of doing it is irregular, it is an irregularity which works no prejudice to those defendants against whom the judgment is taken. They should not, therefore, be permitted to assign it for error."

*Third*—It is contended that there was a variance between the evidence and the declaration, and that the trial court erred in refusing to exclude such evidence upon the motion to that end made at the close of the plaintiffs' evidence, and again after all the evidence was in.

Upon this branch of the case we concur in what is said by the Appellate Court in their opinion in this case, which is as follows (p. 398): "In *Swift* v. *Rutkowski*, 182 Ill. 18, where a similar motion was made at the close of plaintiff's evidence, the court said: 'It is a well settled rule that a party desiring to take advantage of a variance between the declaration and the evidence should object to the evidence when offered and point out wherein the variance consists, so that the other party may amend the declaration and thus avoid the objection. If this course is not pursued the objection to the evidence will be regarded as waived.' If the objection was so made in the present case our attention has not been called to it. It appears only to have been made after the plaintiffs had closed their evidence, when the right to make it had been waived. But aside from the waiver, we do not regard the objection as well taken. The proof substantially sustains the declaration as to the material averments and as to particulars essential to recovery."

The main ground of variance, complained of by appellant, is that the plaintiffs charged in their declaration a delivery of the freight to the defendants jointly at Chicago, when it was in fact a delivery to the appellant alone. We do not understand the declaration as charging the delivery to have been a joint delivery. If the proof showed a delivery to any one defendant at Chicago, the pleading was good as to that one; or, if the proof showed a delivery to a defendant at Chicago who

received the goods for the other defendant, it would still be a delivery as to all the defendants at Chicago. There was no variance in this case because all torts are joint and several, and the jury may find one or any guilty, or one or any not guilty. (*Baker* v. *Railroad Co.* 42 Ill. 73; *Indianapolis and St. Louis Railroad Co.* v. *Hackethal,* 72 id. 612; *Frink* v. *Potter,* 17 id. 406; *Swift* v. *Rutkowski, supra*). If A and B are tort feasors, a delivery to A alone supports a judgment against him. In addition to this, the bills of lading, issued to appellees at Malvern, Iowa, show that the appellant became the agent of appellees to deliver the cars to the succeeding carriers. The law being that the carrier, who delivered these cars to the appellant at Chicago, was the agent of appellees, and made the delivery on their behalf, the delivery to appellant was in contemplation of law by the appellees through their agent, and there is no variance between the declaration and the proof on this point. (Hutchinson on Carriers,—2d ed.—sec. 108.)

*Fourth*—It is charged by the appellant, that the first instruction, given by the trial court for appellees, was erroneous upon the alleged ground that it enumerates a number of facts in favor of the appellees, and ignores the defense of appellant, that the mistake in billing was the mistake, not of appellant acting for itself, but as agent for the "Big Four." There was no error in the instruction in this regard. The question, whether or not the relation of principal and agent existed between the "Big Four" and the appellant, depended upon the construction of the written contract hereinbefore referred to. The interpretation or construction of written contracts is a question of law for the court, and not one of fact for the jury. (*Adams and Westlake Manf. Co.* v. *Cook,* 16 Ill. App. 161; *Kamphouse* v. *Gaffner,* 73 Ill. 453; *Belden* v. *Woodmansee,* 81 id. 25). Hence it would have been improper to submit to the jury, by an instruction given to them, the question whether the written contract between

the parties could be so construed, as to indicate that the relation of principal and agent existed between them. That this question was one of law for the court, and not of fact for the jury, was conceded by the appellant when it made its objection to all the evidence and thereby in effect asked the court to rule upon the contract as a matter of law.

*Fifth*—It is said that the court admitted improper evidence on behalf of the plaintiffs. A witness was asked what the condition of the car-load of potatoes, referred to in a certain letter shown to him, was when it arrived in Philadelphia, and he answered that the car-load of potatoes was in bad condition. It is said that this question called for a conclusion of the witness. We think that the condition of the potatoes upon their arrival in Philadelphia was a question of fact, and that the statement as to the condition of the potatoes, whether good or bad, was not a conclusion from their appearance. It is complained that the witness did not pretend that he had ever seen the potatoes. Whether or not he had seen them was ground for cross-examination; but his answer shows that he knew their condition. Moreover, the answer was given in a deposition taken upon notice; and the objection was one that could be obviated by better evidence, so that the proper method, in which it should have been urged, was by making a motion to suppress the deposition. No such motion was made before the trial, and it was too late to make it at the trial. (*Balkwill* v. *Bridgeport Wood Furnishing Co.* 62 Ill. App. 663.)

Some other objections are made to the evidence, but we do not regard them of sufficient importance to require further discussion.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*