12   752
116  1049

FEARN, PUTNAM & CO v. W. A. RICHARDSON.

A merchant in Louisville filled an order on him for merchandize to be shipped to the purchaser at
    Vicksburg, and took a bill of lading for the same, deliverable to the purchaser at Vicksburg, from
    the agent of a steamboat on which the goods were to be transported. The goods were taken by
    drays from Louisville to Portland, to be there received on the boat according to the custom of the
    trade in low water on the Ohio river. At Portland the goods were delivered to a different boat
    from the one from which a bill of lading had been taken, and were never delivered to the purchaser
    at Vicksburg. *Held :* That the bill of lading in such a case is conditional, and only binding in
    case of actual delivery of the goods to the steamboat.
The vendor of the goods did not use ordinary care and diligence in shipping the goods and the pur-
    chaser is entitled to recover back the price paid for them.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J.
     *Price & Day*, for plaintiffs and appellants.    *H. Gaither*, for defendant.

MERRICK, C. J.  The plaintiffs, doing business at Jackson, Mississippi, or-
dered thirty coils of rope from the defendant, a dealer at Louisville in wool,
hemp, bagging, rope, twine, &c.

The latter made out an invoice of the goods and took a bill of lading for
them from the steamboat Republic on the 2d August, 1854, signed by "*P.
Lus. Barham*, agent, per *S. Bomer*" by which the merchandize was to be de-
livered to plaintiffs agent at Vicksburg, Mississippi.  The plaintiffs in payment
remitted their bill of exchange upon the house of *Fearn, Donnegan & Co.*, of
New Orleans, which was accepted by them.  The merchandize never having
come to hand the bill of exchange was protested for non-payment, but was
finally paid by the acceptors on the 20th December, 1855.

This action is brought by the plaintiffs to recover back this sum of money
as paid in error.

The proof shows that the Ohio river is usually low in August, and that in
low water the custom of the trade is to take bills of lading from the agents of
the boats in Louisville, and forward the goods by drays to the boats at Port-
land, accompanied by dray tickets addressed to the boats on which parties in-
tend to ship, giving the marks and numbers of packages.  Sometimes the bill
of lading has the condition inserted, "subject to dray tickets."

It appears from the correspondence of the parties, which has been produced
and on which the case must be determined, that the Republic did not receive the
goods, but that they were taken by a boat called the Odd Fellow, and reshipped on
the steamer Dresden and finally delivered to *Messrs. J. C. Griffin & Bro.*
Memphis, Tennessee.  They were claimed by a *Mr. Ford*, as belonging to his
brother who had failed, and whose business he was winding up.  He took six
coils of the rope to his plantation, and the rest of it he sold to *Griffin & Bro.*
The parties doubting their respective rights to recover of *Griffin & Bro.* and
*Ford*, have canvassed in their correspondence the question on whom the loss
must fall.  The defendant contends that he was only an agent, that he took a
bill of lading from the boat and sent the goods to Portland for the boat, and
that he did his duty and was discharged.  The plaintiffs contend that the goods
were never properly shipped and delivered.  It is not important to consider
whether the defendant must be considered as a dealer on his own account or as
a factor.  In either case it was his duty to see the goods shipped.  It has been
held that in ordinary cases the captain of a vessel is without authority to bind the

owners by signing a bill of lading unless the goods are actually delivered or put on board the vessel. Abbott on shipping, p. 323, note 3. But the custom of trade at Louisville it seems, is to sign the bills of lading before the goods are sent by the drays to Portland. In such cases the bills of lading must be considered as conditional and only binding in the event the goods are really delivered to the boat at Portland.

It would thence seem that that the production of a bill of lading alone, signed by the agent in Louisville, does not show a delivery to the steamboat, but that the production also of the dray receipts are required in order to fix the liability of the owners of the boat. The defendant has not therefore shown that ordinary care and diligence which was required of him, whether he be considered a vendor of the goods or a mere agent. He should have shown that the dray receipts were signed by the clerk or other officers of the Republic, and he did not exercise proper care, inasmuch as he does not appear to have examined the dray receipts, on the return of the drays from Portland, in order to ascertain whether the goods had been delivered, and if so, whether they had been delivered to the right boat.

But the defendant further contends that at the time the draft was paid the plaintiffs did not pay in error, for they had full knowledge of the whole transaction and are therefore precluded from recovering. C. C. 2280. It is admitted that the draft was paid by *Fearn, Donnegan & Co.*, the acceptors. We think, therefore, the payment must be considered as relating to the date of the draft, and *that* epoch must be considered its date between the parties on the question before us.

The garnishees have sufficient funds in their hands to pay the debt.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, and that the plaintiffs do recover and have judgment against the defendant, for the sum of three hundred and sixteen 47-100 dollars, with legal interest thereon from the 28th day of December, 1855, until paid, and costs of both courts, and it is further ordered, that said garnishees, *Parmele & Brother*, pay said sum of money, interest and costs, out of the funds attached in this suit, and admitted by their answers to be in their hands.