The plaintiff failed to establish a contract by the defendant to carry him and his baggage from New York to New Orleans, via
the "Mobile route" from Niagara Falls, as alleged in the complaint. On the contrary the proof conclusively negatived the existence of a through contract by the defendant. The only contract between the plaintiff and defendant for the carriage of the former was made at Niagara Falls, about July 1, 1876, through the purchase there by the plaintiff, of tickets for himself and family over the defendant's road from Niagara Falls to the city of New York, and from the latter place to Niagara Falls on their return. The plaintiff at that time held return tickets from Niagara Falls to New Orleans by the Mobile route, purchased at New Orleans. There is no evidence that the defendant was interested in that route. It appeared that this route in connection with the defendant's road formed a continuous line of railroad between New York and New Orleans, but no community of interest between the defendant and the several corporations operating the lines of road embraced therein was shown.
The case, however, was not disposed of on the trial, upon any question of pleading. The facts were shown without objection, on the ground of variance. The nonsuit was granted upon the ground that the facts proved did not disclose a cause of action, and this is the only question presented on this appeal.
The essential facts may be briefly stated. The plaintiff on the 17th of August, 1876, having the tickets above stated, entitling him and his family to be carried from New York to New Orleans,via the Mobile route from Niagara Falls, presented *Page 282 
them with his baggage to the baggage-master at the baggage-room of the defendant in the city of New York, and requested the baggage-master to check the baggage from New York to New Orleans by the route indicated by the tickets. The baggage-master asked to see the tickets, examined them and thereupon gave the plaintiff two checks for his trunks from New York to New Orleans. The plaintiff took the checks, put them in his pocket without examining them, and afterward gave them to his wife for safe-keeping. On the same day the plaintiff and his family commenced their return journey to New Orleans on the route indicated by the tickets, and when near New Orleans the checks were handed to the agent of a transfer company, with directions to deliver the baggage at the plaintiff's residence in that city. It was then ascertained that the checks were those used for baggage sent from New York to New Orleans via what is called the "Great Jackson" route from Niagara Falls. It subsequently transpired that the plaintiff's baggage was in fact sent from Niagara Falls over the route indicated by the checks, and that while in transit, was substantially destroyed by an accident at Tugaloo, Miss. The case contains a printed fac simile of the checks. The words "New Orleans and New York" are distinctly shown on the checks, and at the bottom are numerous letters and abbreviations which, as explained, indicate the several roads constituting the "Great Jackson" route from New York to New Orleans.
The delivery of the baggage by the defendant at Niagara Falls to the agents of the Jackson route, was in direct violation of the plaintiff's instructions and of the undertaking of the baggage-master on receiving the baggage. The acts and conduct of the latter on that occasion are consistent only with the theory that he assented to the plaintiff's request to check the baggage by the Mobile route, and through ignorance, negligence, or mistake, checked it by the Jackson route. If the undertaking of the baggage-master, to check the baggage by the Mobile route was in law or in fact the undertaking of the defendant, its liability for the loss of the baggage, in the absence *Page 283 
of contributory negligence on the part of the plaintiff, is settled by authority. The agreement to check the baggage by the Mobile route included an agreement ex vi termni to deliver it at the end of its road to the next succeeding carrier on that route. If such delivery had been made, the defendant's responsibility would have terminated. But having misdelivered the baggage contrary to the agreement, to another carrier, it remained liable as insurer for any injury or loss occurring on the route upon which the baggage was diverted (Johnson v. N YCentral R.R. Co., 33 N.Y. 610; Condict v. Grand Trunk R.Co., 54 id. 500, and cases cited.)
The defendant rests its defense to the action on two grounds,first, that the agreement of the baggage-master to check the baggage by the Mobile route was unauthorized and did not bind the defendant; and second, that the omission of the plaintiff to examine the checks was contributory negligence which prevents a recovery.
It will be useful in determining the principal question, to refer to the obligation which a carrier of passengers by rail assumes on the sale of a passage ticket, in respect to the personal baggage of the passenger. The carriage of the baggage of the passenger, under reasonable limitations as to amount, is the ordinary incident to the carriage of the passenger, and the duty arises on the part of the company to carry the baggage of the passenger, as incident to the principal contract without any specific agreement or separate compensation. The obligation, moreover, includes, as in the case of merchandise, an obligation to deliver the baggage carried. (Cole v. Goodwin, 19 Wend. 251; Powell v. Myers, 26 id. 591.) There arises therefore on the sale of a passenger ticket a contract to carry the person and the baggage of the passenger between the points indicated, on the road of the company issuing it, and to deliver the baggage at the end of the route to the passenger or his duly authorized agent. In this State a statutory duty is also imposed upon railroad companies receiving baggage for transportation, to affix to each *Page 284 
parcel a metallic check with numbers stamped thereon, and to deliver a duplicate to the passenger or owner. (Laws of 1847, chap. 272, § 6; Laws of 1850, chap. 140, § 37.) These statutory provisions prescribe the duty of railroads within this State, receiving baggage to be transported to points on the line of the road receiving it, and impose no obligation to check baggage beyond such line, but they contain, so far as we know, the first legislative recognition of a system which has expanded to meet the growing demands of the business, so that the checking of baggage has become the common incident of railroad passenger transportation in the United States. Personal delivery of baggage to the passenger at the end of the transit on a particular road, has to a great extent been superseded in case of through passengers having tickets for an entire route owned and operated by separate but connecting lines, by the custom of the first carrier checking the baggage to the final destination and delivering it at the end of his route to the next succeeding carrier, who in turn delivers to the next carrier, and so ontoties quoties until it reaches the possession of the last carrier on the route. This general practice is a matter of common observation and experience, and has so become a part of the common knowledge of the community that courts may take judicial notice of its existence. It has been generally adopted by reason of its manifest utility and convenience, and the practice promotes the mutual interests of the railroads and the public. It may not be, and probably is not a practice obligatory upon railroad companies, and mutual arrangements between connecting roads must be made before the practice can be adopted; but the fact remains, that in most cases such arrangements are perfected, and a traveler having a through ticket over connecting lines may reasonably expect, on delivering his baggage to the first carrier, to receive a check relieving him from the necessity of seeing to its transfer to the several successive roads in the line of travel.
We come now to the question as to the authority of the baggage-master to bind the defendant by an agreement to check the plaintiff's baggage by the Mobile route. *Page 285 
There is no evidence of the actual authority, oral or written, conferred upon the baggage-master upon his appointment. Whether in fact he had authority to check baggage over the Mobile route, or whether the defendant was accustomed to check baggage over that route, does not appear. He had authority to check over the Jackson route, as is inferable from his being trusted with checks over that line. But the authority of an agent may be implied in many cases from his official designation, the position in which he is placed, and the duties which naturally appertain thereto. Parties may deal with the agents of corporations upon the presumption that they possess the powers usually assigned to the office they hold (2 Kent's Com. 350, note, and cases cited), and the principal is bound as to third persons acting in good faith, by the act of an agent within his apparent authority, although in the particular instance it was unauthorized. In considering the inference to be drawn as to the authority of the baggage-master in this case from his official designation, and from the fact that he was acting as the agent of the defendant in receiving baggage of passengers, the jury was entitled to take notice of the usual methods of railroad transportation. The contract to carry the baggage of passengers as incident to the contract to carry the person, does not become defined as to the particular baggage, its amount, or other incidents, until the baggage is delivered to the baggage-master. So also in respect to checking baggage, the arrangement, from the nature of the business, must, in large places at least, be made with the baggage-master. It would be impracticable in the city of New York, for example, to arrange the details for the carrying of baggage, with the ticket agent. Such details are left, as they necessarily must be, to be subsequently arranged between the passenger and baggage-master at the very time of delivering the baggage. The passenger can ordinarily deal with no one else in respect to them. He may not know, or if he knows, he would not ordinarily be able to find the superior agents of the corporation. The passenger has, we think, the right to assume that the baggage-master possesses *Page 286 
the requisite authority to make all ordinary and usual arrangements with passengers in respect to the transportation of baggage. If a question arises as to checking baggage beyond the line of the road receiving it, the practice of the company is presumably known to the baggage-master, and he is practically the only person to whom the inquiry can be addressed. It would produce great inconvenience if it should be held that the baggage-master did not represent the company in respect to the ordinary incidents of baggage transportation. It could not be claimed that a baggage-master, in the absence of special authority, could bind the company by a contract to carry baggage beyond the terminus of the road, or agree upon special or unusual modes of delivery, as to deliver at a place other than the depot of the company, or (perhaps) to a specified person at the terminus of the route, other than the owner. But it is we think within the apparent scope of a baggage-master's employment, when asked by a passenger whether the company checks baggage over a route indicated by his passage tickets, to answer the question and to bind the company by checking it over connecting roads. In this case the request to check over the Mobile route was made to the baggage-master and assented to by him, and he assumed to give checks in accordance with the request. This constituted, we think, an agreement binding on the company, and unless the plaintiff's omission to examine the checks was contributory negligence, we are of opinion that the nonsuit was erroneous. The primary purpose of giving a passenger a duplicate check is to enable him to identify and claim his baggage at the end of the route. It has never, we think, been regarded as embodying the contract of carriage, but only as a voucher or token for the purpose mentioned. (See Quimby v. Vanderbilt, 17 N.Y. 306;Van Buskirk v. Roberts, 31 id. 661; Blossom v. Dodd,
43 id. 264; 3 Am. Rep. 701; Rawson v. Penn. R.R. Co., 48 N.Y. 212. ) The plaintiff had a right to repose upon the representation of the baggage-master, without examining the checks. It is, however, a conclusive answer in this case to the claim to take *Page 287 
the question of contributory negligence from the jury, that an inspection of the checks would not be likely to apprise a person not an expert or familiar with the roads making up the lines from New York to New Orleans, that a mistake had been made. The plaintiff was at least entitled to have the question of negligence on his part submitted to the jury.
For the reasons stated we think the nonsuit was erroneous, and the judgment, therefore, should be reversed and a new trial ordered.
All concur, except EARL, J., not voting.
Judgment reversed.