RAILROAD *v.* CABINET COMPANY.

*(Jackson.* May 21, 1900.)

1. COMMON CARRIER. *Measure of damages for negligent delay in delivery of goods.*

For negligent delay in delivery of goods, the carrier, who has been requested to ship promptly and notified that the goods were designed to fill a "penalty contract," is liable for such special damages as the shipper may reasonably incur by reason of his failure, occasioned by such delay of the carrier, to perform his contract within the stipulated time. (*Post, pp. 570–578.*)

Cases cited: McDonald *v.* Unaka Timber Co., 88 Tenn., 43; Railroad *v.* Hale, 85 Tenn., 69.

2. SAME. *Initial carrier's liability for negligent delay in delivery of goods.*

An initial carrier, by whose negligence goods have been misdirected and thereby delayed in delivery, cannot escape any part of the resulting loss or damage by reason of a limitation of its liability in the bill of lading, to loss or damages occurring on its own line, although the negligence of a connecting carrier concurred and contributed to cause the delay and increase the damages. (*Post, pp. 577–579.*)

Case cited: Bird *v.* Railroad, 99 Tenn., 719.

3. DAMAGES. *Stipulation for liquidation.*

Where a contract is of a nature that damages for its breach are uncertain and not susceptible of exact measurement—*e. g.*, a building contract—it is lawful for the parties to stipulate that a fixed sum shall be recoverable for its breach; and if the stipulated sum is reasonable, under the circumstances, it will be treated as liquidated damages and enforced, though it may be called a penalty or forfeiture in the contract, and, on the other hand, if it is not reasonable, it will be treated as a penalty or forfeiture, however named in the contract, and its enforcement refused. (*Post, pp. 578, 579.*)

Railroad *v.* Cabinet Co.

Cases cited: Tenn. Mfg. Co. *v.* James, 91 Tenn., 154; Baird *v.*
Tolliver, 6 Hum., 187; Bird *v.* Railroad, 99 Tenn., 719.

4. INTEREST. *Not allowed, when.*

It is error for the Court to peremptorily instruct the jury to allow
interest on a recovery of damages against a common carrier
for negligent delay in shipment of goods. (*Post, pp. 579–581.*)

Code construed: § 3494 (S.); § 2702 (M. & V.); § 1945 (T. & S.).

5. COSTS. *Adjudication of.*

Where a judgment for damages is affirmed except as to a small
item of interest, which is remitted upon the Court's suggestion,
the entire costs of the appeal will be adjudged against the ap-
pellant. (*Post pp. 581, 582.*)

---

FROM   MADISON.

---

Appeal  in  error  from  the  Circuit  Court  of
Madison  County.  LEVI  S.  WOODS,  J.

C.  G.  BOND  for  Railroad.

HAYS & BRIGGS for Cabinet Company.

CALDWELL, J.   This is an action of damages by
a shipper against a common carrier.

On  the  26th  of  February,  1898,  the  Southern
Seating  &  Cabinet  Company,  of  Jackson,  Tenn.,
entered  into  a  contract  with  W.  A.  R.  Goodwin,
rector  to  manufacture  and  put  up  certain  pews  in
St.  John's  Episcopal  Church,  at  Petersburg,  Va.,
for  the  sum  of  $524.  The  contract  contained  a

provision that the company "shall forfeit $10 per day for every day it fails to have pews in place after May 6, 1898," but that provision was subsequently so changed as to waive the forfeiture if the pews should arrive at Petersburg by the third day of that month.

The pews were manufactured, and by the contracting company delivered to the Illinois Central Railroad Company, at Jackson, Tenn., on the 20th of April, 1898, for shipment to the purchaser at Petersburg, Va.

The representative of the manufacturing and selling company at the time of delivering the pews for transportation, said to the railway agent: "I wish you would forward this car as quick as you can; this is a penalty contract." The railway agent expressed assent to the request, and promptly executed a bill of lading, properly stating the name of the consignee and the destination of the pews. Nevertheless, the car remained in Jackson two days after the issuance of the bill of lading, and when it left, the waybill, through some inexcusable mistake of the railway agent, called for Parkersburg, W. Va., as the destination of the pews. The car reached the latter point on the 27th of April, and there remained until the 13th of May, when, by direction of the defaulting carrier, it was started to Petersburg, Va., its true destination, where it ar-

rived on the 21st of May—twenty-four days later than it would probably have arrived but for the misdirection in the waybill, and eighteen days after the contract limit for arrival of the pews had expired.

The purchaser accepted the pews, but in doing so required a deduction of $180 from the contract price, and paid only the balance of $344. He says he deducted that sum, not upon the mere ground that he had the right to do so under the forfeiture clause of the contract, but because he considered it "just compensation" for the inconvenience and expense resulting from the delay, and for the damage done to the pews in the transportation, and that he would not have received the pews in their damaged condition and after he had suffered the inconvenience and expense of the delay without that deduction from the contract price.

In December, 1898, the Southern Seating & Cabinet Company commenced this action against the Illinois Central Railroad Company before a Justice of the Peace, whose warrant stated the nature and ground of suit, as follows: "For damages caused by the delay in shipping and delivering certain goods consigned by the plaintiff to W. A. R. Goodwin, Petersburg, Va., April 20, 1898, on account of which delay the said goods were damaged and the plaintiff damaged in the sum

of $180, forfeited by it under its contract for the delivery of said goods, of which the defendant had notice."

The Justice of the Peace pronounced judgment in favor of the plaintiff, and the defendant appealed to the Circuit Court, where verdict and judgment were rendered for the plaintiff for $180, with interest. From the latter judgment the railway company has appealed in error to this Court, and here assigned several objections to the proceedings below, on account of which a reversal and new trial are sought.

In the course of his charge the trial Judge instructed the jury as follows:

"If the goods were shipped and it was the fault of the railroad company in making a misdirection or misshipment that caused the delay after the 3d day of May, 1898, and if the plaintiff in this case, through its agents and representatives, notified Mr. Reavis or Col. Dinkins, or both of them, and they were representatives of the railroad company in receiving and shipping the goods, that it was a forfeit contract, that it was a penalty contract, and they received it with the knowledge that there was a penalty attached to the contract, then it would have been the duty of the railroad company to have shipped the goods, and if it accepted them that way and was guilty of negligence in not getting them to Petersburg

in the time stated in the contract, and it had ample time to have done so, then it would be liable for the damages the plaintiff has sustained because of the penalty contained in the contract. Now, the burden of proof is upon the plaintiff to show that the railroad employees did receive the goods for the purpose of shipping them, had notice of the penalty, and it was a penalty contract; if it did have notice of the penalty contract, and the goods were accepted by it to be shipped, and it was the fault of the railroad company that they were not delivered by that date, to wit, the 3d day of May, 1898, the railroad company would be responsible for the penalty of the contract for the time the goods were not delivered, if the delay was caused by the fault of the railroad company."

The first assignment of error is directed against that instruction, the point of the objection being that it makes the loss sustained by the plaintiff under the penalty clause of its contract with Goodwin, and not the actual injury and depreciation of the pews by the delay, the measure of the defendant's liability.

Compensation is the primary principle underlying the law of damages; and, where one of two contracting parties breaches his obligation, he is ordinarily liable to the other party, according to the nature and purpose of the contract, for all

loss suffered by him as the natural consequence of the breach.

In the case of *Hadley* v. *Baxendale,* 9 Exch., 341, where a carrier was sued in damages for negligent delay in the transportation of a mill shaft, the Court, referring to the rule for the admeasurement of damages, said: "Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach should be, either such as may fairly and reasonably be considered as arising naturally (*i. e.,* according to the usual course of things) from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under the special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation

the amount of injury which would arise generally, and in the great multitude of cases not by any special circumstances, from such a breach of contract."

This rule has been adopted in cases too numerous to mention at this time. It was quoted approvingly by this Court in *McDonald* v. *Unaka Timber Company,* 88 Tenn., 43.

Where property is shipped to market for general sale to such purchasers as may be obtained, and the carrier unreasonably and negligently delays the transportation, the measure of damages for that default is the depreciation in salable quality and market value of the property at the place of destination between the time when it should have arrived and when it did in fact arrive (*Railroad* v. *Hale,* 85 Tenn., 69; Hutchinson on Carriers, sec. 771; 3 Wood's Railway Law, 1607); but if the property is sold at an advantageous price before shipment, on condition that it be delivered within a certain time, and the carrier, with knowledge of that fact, undertakes the transportation, and, through negligence, fails to make the delivery in time, and the conditional purchaser declines to receive the property on account of the delay, the liability of the carrier is measured by the difference between the market value of the property when it arrived at the place of destination and the price at which

it was conditionally sold before shipment. *Denning* v. *Grand Trunk Railway Company,* 48 N. H., 455 (S. C., 2 Am. Rep., 267); Hutchinson on Carriers, sec. 772.

The difference between the modes of measuring the carrier's liability in the two cases is due to the difference between its obligations and the consequences of their breach. In the former case, the obligation is general, and the loss and liability are general, while in the latter case the obligation is special, and the loss and liability are special.

Referring to the carrier's responsibility for breach of a special contract, by delay, a distinguished author has said:

"But if the intended use and application of the goods to be carried was expressly brought to the notice of the company's servants at the time they received them, or could be reasonably inferred from the circumstances known to them, so that the special use or application might be fairly considered to be within the contemplation of both the parties to the contract, the consignor is entitled to recover the damages naturally resulting from his so being unable to use or apply the goods, since both parties may be said to have made this the basis of the contract." 3 Wood's Railway Law, 1607.

The contract breached by the defendant now

before the Court was undoubtedly a special one. The pews in question were manufactured after a peculiar design, for a particular church, under a particular contract, of which the defendant was distinctly notified at the time it accepted them for carriage. The contract of carriage being special, the liability for its nonobservance was likewise special, and the plaintiff was entitled to recover all damages naturally resulting from the breach, whatever the amount may have been.

The trial Judge, in that portion of the charge heretofore quoted, instructed the jury, in substance, that the proper measure of the plaintiff's recovery, if any should be allowed, would be the penalty of its contract with the consignee for the period the pews were delayed beyond the time therein stipulated as the required date of delivery, which the record shows amounted to $180, the sum actually deducted by the consignee from the purchase price of the pews. That was certainly the amount of the plaintiff's real loss; and, in view of the notice given at the time of the shipment, it may fairly and reasonably be assumed to be the exact extent of the injury which the plaintiff and the defendant contemplated as the natural result of so long a delay in the delivery of the pews, and, therefore, the true measure of damages recoverable for the breach.

In opposition to this view it might be said,

20 P—37

with force and plausibility, that what is denominated the penalty clause of the plaintiff's contract of sale was against public policy, and therefore not enforceable, and that, for that reason, the carrier, though fully informed of that feature of the contract, would not be legally responsible for the deduction made and permitted thereunder; but that suggestion, if made, could not prevail in the end; for, while contractual penalties, as such, are now rarely enforceable, either in law or equity, provisions like that in this contract, whatever called by the parties, when deemed reasonable, as this one must be, are, by the Courts, treated and enforced as stipulations for liquidated damages.

If the contract is for a matter of uncertain value, and a reasonable sum is fixed by the parties as the amount to be paid on breach, that sum, though actually called a penalty in the instrument, is recoverable as liquidated damage if the obligation be not in fact performed. Clark on Contracts, 600, 601; 1 Pomeroy's Eq. Jur., sec. 440; *Tennessee Manufacturing Company* v. *James,* 91 Tenn., 154; *Kemble* v. *Farren,* 6 Bing., 147; *Jacquith* v. *Hudson,* 5 Mich., 123; 10 L. R. A., note 826, *et seq.;* 3 Parsons on Con., 156-7.

It is not uncommon in building contracts, to which class this one belongs, for the contractor to bind himself to pay a stipulated daily or weekly

Railroad v. Cabinet Co.

sum for delay beyond the time appointed for completion, and such sum, when reasonable—that is, not excessive—is generally, if not universally, held to be recoverable as liquidated damages, if there be a breach. Clark on Con., 600, note; 30 Am. Rep., 31, 32, 35, note.

The enforcement of such a rule against the carrier, with full notice, cannot operate as a hardship upon him, because the sum stipulated by consignor and consignee must be reasonable to be enforceable between them, and for the same reason it must be so before it can be made the measure of responsibility on the part of the carrier. If it be unreasonable or excessive, the stipulation, however named, is a penalty, and only actual damages, to be ascertained in the ordinary way, can be recovered.

"According to the better opinion, the parties, even if they intended to fix upon the amount stipulated as liquidated damages, will, nevertheless, be limited to the recovery of actual damages, if the amount stipulated for is so greatly in excess of the actual damages that it is, in effect, a penalty." Clark on Con., 601; 2 Story's Eq. Jur., sec. 1318; *Baird* v. *Tolliver,* 6 Hum., 187; 3 Parsons on Con., 157, 161; Wood's Mayne on Damages, 203, note.

The Illinois Central Railroad Company, as initial carrier, issued a through bill of lading for the

pews, and routed them over its own line to Louisville, Ky., and thence over that of the Chesapeake, Ohio & Southwestern Railroad Company, as ultimate carrier, to Petersburg, Va. In the bill of lading it limited liability for loss or damage to that line on which it should occur; but that limitation, though valid in law (*Bird* v. *Railroad*, 99 Tenn., 719) is of no avail in this case, because the injury complained of unquestionably resulted from the negligent misdirection in the waybill, made out by the initial carrier before the goods were started upon their journey. The ultimate carrier delivered the goods at the destination for which they were billed, in ample time to meet the terms of the contract between the consignor and consignee, but that was not the true destination; and hence not a compliance with the shipping contract. It may be, as suggested in argument and as implied from special instructions requested by the initial carrier and refused by the trial Judge, that the ultimate carrier received notice of the misdirection in time to have sent the goods from Parkersburg, W. Va., to Petersburg, Va., sooner than it did, and thereby to have prevented some of the loss to the consignor; yet, if that were established as a fact, it would at most only fix joint liability upon the ultimate carrier, and would not lessen the liability of the initial carrier for the consequences of its negli-

Railroad *v.* Cabinet Co.

gence. No limitation can have the effect of relieving a carrier from responsibility for its own negligence. *Bird* v. *Railroad,* 99 Tenn., 719, and citations.

The Court below peremptorily instructed the jury to allow interest on whatever amount the plaintiff should be found entitled to recover as damages, and the jury accordingly included in its verdict $14.31 as interest. This instruction was erroneous. The plaintiff's demand was not within either the letter or the spirit of the statute (Shannon's Code, § 3494) enumerating the debts that bear interest as a matter of law. Indeed, it was not for a debt at all, but only for damages.

None of the other assignments of error are well taken.

Plaintiff may remit the $14.31 and have an affirmance as to the balance of the judgment, otherwise a reversal will be entered.

———

Accepting the alternative suggested in the opinion delivered in this case on a former day of the term, the Southern Seating & Cabinet Company remitted the item of $14.31 interest, and took an affirmance as to $180, the amount of damages found below. The entry thereof made on the minutes of the Court concludes with an adjudication

of all costs against the railroad company; and the railroad company now asks the Court to modify that entry .and adjudge the costs of the appeal in error against the Southern Seating & Cabinet Company. The modification is asked upon the ground that "an appeal was necessary to get rid" of the effect of the erroneous instruction on the subject of interest.

Had the railroad company acquiesced in the recovery for damages and limited its appeal in error to the item of interest alone, it would undoubtedly be entitled to the modification sought, for in that event it would have been the successful party in the fullest sense; but having brought the whole case up and been unsuccessful as to everything except the small item of interest, and that item being eliminated by release, the other party is successful, and, being so, is entitled to recover costs.

If this were a suit in chancery, the Court might, in its discretion, adjudge a part of the costs against each party, on the ground that the recovery below has been decreased here. That course, however, though often pursued in equity causes, is not allowable in a law case like that now before the Court.

The motion to modify is overruled.